# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MARGARET OKANE**         :    CIVIL ACTION
                           :
    v.                     :
                           :
**TROPICANA ENTERTAINMENT, INC.**  :    NO. 12-6707

## MEMORANDUM

**SÁNCHEZ, J.**                                    **JANUARY 3, 2013**

In her amended complaint, plaintiff Margaret Okane asserts claims of negligent and intentional infliction of emotional distress against Tropicana Entertainment, Inc. ("Tropicana"), which owns and operates the Tropicana Casino in Atlantic City, New Jersey, based on Tropicana's refusal to remove a security record from its files. For the following reasons, the Court will dismiss the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.  FACTS[1]

On February 16, 1999, while plaintiff was at the Tropicana Casino in Atlantic City, New Jersey, she removed two gaming chips worth a total of $5.00 from a roulette table, apparently as a result of her paranoid schizophrenia. Plaintiff was ejected from the casino, but no criminal charges were filed. In accordance with its normal course of operations, Tropicana's Security Department made an "ejection report" for Tropicana's files. (Am. Compl. Ex. 1.)

---

[1] The following facts are taken from the amended complaint and attachments to the amended complaint.

1

In a December 12, 2003 letter, Tropicana informed plaintiff that it was restoring her gaming privileges at the casino. The letter also informed plaintiff that the ejection report was part of Tropicana's "very extensive security record system" and that Tropicana would not destroy the record "at the request of a patron." (Am. Compl. Ex. 1.) Plaintiff alleges that, since receiving that letter, she has suffered from considerable emotional distress. She further alleges that the record of the 1999 incident remains in Tropicana's files despite her efforts "through the course of many years and many pleadings" to remove it. (Am. Compl. ¶ 7.) In August or September of 2012, plaintiff made a "final plea" to Tropicana through an intermediary, but Tropicana again refused to remove the record. (Id. ¶ 8.)

Plaintiff apparently believes that the record should be removed because the incident occurred over 13 years ago, and because it resulted from her schizophrenia, which is now under control. She contends that the "ongoing existence of [the] security record at the Tropicana Casino" is causing her "severe emotional distress," and alleges that she is suffering from diverticulitis in connection with that distress. (Am. Compl. ¶ 9.) She asserts claims for negligent and intentional infliction of emotional distress, and seeks $1 million in damages.

## II. STANDARD OF REVIEW[2]

As plaintiff has been granted leave to proceed in forma pauperis, 28 U.S.C. § 1915(e)(2)(B) applies. That provision requires the Court to dismiss the amended complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune. Whether an amended complaint fails to state a claim under § 1915(e) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the pleading contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted). Additionally, the Court may consider documents attached to or submitted with the amended complaint. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Furthermore, if an affirmative defense is obvious from the face of the amended complaint, and if no development of the record is necessary, the Court may dismiss any facially invalid claims sua sponte. See Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002).

---

[2] The Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the allegations of the complaint establish that diversity of citizenship exists among the parties and that the amount in controversy exceeds $75,000 exclusive of interest and costs.

**III. DISCUSSION**[3]

    **A.    <u>Plaintiff's Claims Are Time-Barred</u>**

"Under Pennsylvania law, the statute of limitations for both negligent and intentional infliction of emotional distress is two years from the date of accrual." <u>Vaughan v. Pathmark Stores, Inc.</u>, Civ. A. No. 99-0018, 1999 WL 299576, at *3 (E.D. Pa. May 10, 1999); <u>see also</u> 42 Pa. Cons. Stat. § 5524(2) & (7). New Jersey also imposes a two-year statute of limitations on claims for negligent and intentional infliction of emotional distress. <u>Campanello v. Port Auth. of N.Y. & N.J.</u>, 590 F. Supp. 2d 694, 699 (D.N.J. 2008); <u>see also</u> N.J. Stat. Ann. § 2A:14-2. In general, a statute of limitations begins to run when the plaintiff "is aware, or reasonably should be aware, of facts indicating that she has been injured through the fault of another." <u>Baird v. Am. Med. Optics</u>, 713 A.2d 1019, 1026 (N.J. 1998); <u>see also</u> <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 468 A.2d 468, 471 (Pa. 1983) (explaining that "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises" because "a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is

---

[3] Plaintiff is a citizen of Pennsylvania, but her injury is based on a record of an event that occurred in New Jersey, which is apparently maintained in New Jersey. As plaintiff's claims fail under both Pennsylvania and New Jersey law, the Court need not determine which State's law applies.

4

based").

It is apparent from plaintiff's amended complaint and the attachments thereto that, in a December 12, 2003 letter, Tropicana informed plaintiff that it would not remove the ejection report from its security files at her request. Additionally, plaintiff alleges that she has been suffering from inordinate emotional distress "since that time," and that she and the defendant have been communicating about the situation for "many years." (Am. Compl. ¶ 7; see also id. ¶ 14 ("Defendant has had sufficient notice, for many years now, of either [its] intentional or reckless conduct . . . .").) Accordingly, it is evident that plaintiff was aware of the facts giving rise to her claims in December 2003. However, she did not file suit until approximately nine years later, well beyond the statute of limitations. Her claims are therefore time-barred.[4] In any event, plaintiff's claims fail on their merits, as discussed below.

**B.  Negligent Infliction of Emotional Distress ("NIED")**

In Pennsylvania, "the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual

---

[4]That the security record continues to exist, and that the defendants have consistently refused to remove it, do not constitute continuing violations that would render plaintiff's claims timely. Cf. Cowell v. Palmer Twp., 263 F.3d 286, 293 (3d Cir. 2001) (continued existence of municipal liens and township's refusal to remove liens did not amount to continuing violations); Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1041-42 (Pa. Super. Ct. 1999) (continuing violation theory does not apply when insurer repeatedly refuses to defend or indemnify plaintiffs).

5

or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008), order aff'd by equally divided court, 36 A.3d 83 (Pa. 2011).  Recently, the Superior Court indicated that the reach of the first type of NIED claim, the only type relevant here, is limited "'to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach.'"  Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 218 (Pa. Super. Ct. 2012) (quoting Toney v. Chester Cnty. Hosp., 36 A.3d at 95 (opinion in support of affirmance)).[5]  In other words, there must exist special relationship between the plaintiff and defendant that "'encompass[es] an implied duty to care for the plaintiff's emotional well-being.'"  Id. (quoting Toney v. Chester Cnty. Hosp., 36 A.3d at 95).

In New Jersey, "[t]he direct tort of NIED, as opposed to one based on bystander liability, is 'understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care.'"  Green v. Corzine, Civ. A. No. 09-1600, 2011

---

[5] The Justices of the Pennsylvania Supreme Court were equally divided in Toney.  Accordingly, the opinion in support of affirmance does not have precedential value.  Weiley, 51 A.3d at 217 n.16.  Nevertheless, the Weiley Court found it to be persuasive.

6

WL 735719, at *8 (D.N.J. Feb. 22, 2011) (quoting Decker v. Princeton Packet, Inc., 561 A.2d 1122, 1128 (N.J. 1989)). A plaintiff must establish that the defendant owed her a duty of care, that the defendant was negligent, and that the negligence proximately caused plaintiff's injuries. Williamson v. Waldman, 696 A.2d 14, 17 (N.J. 1997). "[R]ecovery for negligent infliction of emotional harm requires that it must be reasonably foreseeable that the tortious conduct will cause genuine and substantial emotional distress or mental harm to average persons." Decker, 561 A.2d at 1128; see also Williamson, 696 A.2d at 23 ("Emotional-distress damages must be based on the fears experienced by a reasonable and well-informed person."). Whether a defendant owes a plaintiff a duty of care is a question for the court. See Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc., 638 A.2d 1288, 1294 (N.J. 1994).

Nothing in the complaint suggests that plaintiff had a contractual or fiduciary relationship with the defendants that would give rise to duty to care for plaintiff's emotional well-being. Nor do general principles of tort law suggest that defendants owed plaintiff a duty under the circumstances of this case. It is simply not foreseeable that a reasonable person would experience severe emotional damage from the maintenance of an internal security record of an event that, in fact, occurred. See Carter Lincoln-Mercury, Inc., Leasing Div., 638 A.2d at 1294 (forseeability of a plaintiff's injury

7

"is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate"); Toney, 961 A.2d at 199 ("The test for negligence is one of 'reasonable foreseeability.'") (quoting Armstrong v. Paoli Mem. Hosp., 633 A.2d 605, 608 (Pa. Super. Ct. 1993)).  That the defendants owed plaintiff a duty of care while she was physically on the premises of their casino in 1999, as plaintiff alleges in her amended complaint, is irrelevant to this case, which is premised on the theory that the defendant breached a duty to plaintiff by maintaining a record in its files.  See Taveras v. Resorts Int'l Hotel, Inc., Civ. A. No. 07-4555, 2008 WL 4372791, at *4 & n.3 (D.N.J. Sept. 19, 2008) (that defendant casino was required to maintain safe premises did not equate to the conclusion that the casino owed compulsive gamblers a duty to protect them from their own gambling behavior).  In sum, the Court will dismiss plaintiff's NIED claim because she cannot prevail under either Pennsylvania or New Jersey law.

    **C.**    **Intentional Infliction of Emotional Distress ("IIED")**

To state a claim for intentional infliction of emotional distress under either Pennsylvania or New Jersey law, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quotations omitted); see also Buckley v. Trenton Saving Fund Soc'y, 544 A.2d 857,

863 (N.J. 1988); Restatement (Second) of Torts § 46.[6] "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 cmt. d. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[] . . . ." Id. cmt. h; see also Buckley, 544 A.2d at 864; Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

Here, the conduct alleged by plaintiff is insufficiently outrageous as a matter of law to sustain a claim for intentional infliction of emotional distress. The basis for plaintiff's claim is that the defendants are refusing to destroy a record of an incident during which plaintiff stole property from their casino as a result of her paranoid schizophrenia – an incident that plaintiff acknowledges occurred. In other words, the defendants are maintaining an internal record of the incident for security purposes. That conduct is not outrageous, even though the incident was minor and took place over a decade ago, and even though plaintiff's

---

[6] The Pennsylvania Supreme Court has not expressly adopted the tort of intentional infliction of emotional distress. See Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 216 n.12 (Pa. Super. Ct. 2012). However, the Pennsylvania Supreme Court has acknowledged the tort and analyzed it in accordance with the Restatement (Second) of Torts § 46. See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). Additionally, the Third Circuit has predicted that Restatement's formulation of intentional infliction of emotional distress will eventually be adopted by Pennsylvania's highest court. See Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 890 (3d Cir. 1998).

9

schizophrenia is currently under control.  Cf. Fanelle v. LoJack Corp., 79 F. Supp. 2d 558, 565 (E.D. Pa. 2000) ("[U]nder no set of facts could the reprinting of a truthful, non-defamatory newspaper article, without more, be considered utterly intolerable and beyond all bounds of decency."); Goodson v. Cigna Ins. Co., Civ. A. No. 85-0476, 1988 WL 52086, at *17 (E.D. Pa. May 20, 1988) ("Posting an employee's photograph at security stations in a commercial building does not amount to 'extreme and outrageous conduct.'").  Indeed, the defendants' conduct pales in comparison to the type of conduct that courts have found to sustain an IIED claim.  See, e.g., Chuy v. Phila. Eagles Football Club, 595 F.2d 1265, 1274 (3d Cir.1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false); 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 547 A.2d 1134, 1147-48 (N.J. Super. Ct. App. Div. 1988) (landlord failed to provide central heating, running water and reasonable security in an effort to get tenants to vacate); Banyas v. Lower Bucks Hosp., 437 A.2d 1236, 1237-38 (Pa. Super. Ct. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide).  Accordingly, plaintiff has failed to state a claim for intentional infliction of emotional distress under either Pennsylvania or New Jersey law.

## IV. CONCLUSION

For the foregoing reasons, the amended complaint is dismissed. The Court concludes that it would be futile to provide plaintiff with an opportunity to amend her complaint because it is apparent that her claims are time-barred and that she is seeking to recover damages based on conduct that simply is not actionable. An appropriate order follows.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, J.**